## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **TIA BARNETT**, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| *v.* | **JURY TRIAL DEMANDED** |
| **NORTEK SECURITY & CONTROL LLC,** a California corporation and **SECURITY SPECIALIST OF AMERICA LLC**, a Florida corporation, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiff Tia Barnett brings this class action against Defendants Nortek Security & Control LLC ("Nortek") and Security Specialist of America LLC ("Security Specialist")(collectively referred to as "Defendants") to stop Defendants' practice of placing unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendants' knowing and willful violations of the TCPA.

1

2.      Defendant Nortek is one of the largest home and business security companies in the United States.  One of Nortek's brands is 2GIG, which it promotes on a website owned and operated by Defendant Nortek, www.2gig.com.

3.      To promote its products and services, Defendant Nortek conducted (and continues to conduct) a wide-scale telemarketing campaign that features unsolicited prerecorded and/or autodialed telephone calls to consumers' cellular telephones, without consent, and in violation of the TCPA.

4.      As part of its wide-scale telemarketing campaign, Defendant Nortek uses call centers to market its goods and services.

5.      Defendant Security Specialist operates as a call center and markets and sells Defendant Nortek's goods and services including the 2GIG brand of items.

6.      By making the prerecorded/autodialed telephone calls at issue, Defendants have caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and Class Members' use and enjoyment of their telephones.

7.      The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8.      Plaintiff Tia Barnett is a natural person and citizen of the State of Florida residing in the County of Palm Beach.

9.      Defendant Nortek is a corporation organized and existing under the laws of the State of California with headquarters located at 1950 Camino Vida Roble, Suite 150, Carlsbad, CA 92008.

10.     Defendant Security Specialist is a corporation organized and existing under the laws of the State of Florida with its principle address located at 7402 North 56th Street, Suite LS-18, Tampa, FL 33617.

## JURISDICTION AND VENUE

11.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

12.     The Court has specific personal jurisdiction over Defendants with respect to Plaintiff's claims because the calls at issue were directed to and received in this District, and the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

13.     The Court has general personal jurisdiction over Defendants with respect to Plaintiff's claims because they solicit and conduct significant business in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the causes of action arose, in substantial part, in this District. Venue is additionally proper as Plaintiff resides in this District.

## THE TCPA

15.     The TCPA prohibits: (1) any person from calling a cellular telephone number;

3

(2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

17.     The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

18.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

19.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

20.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

21.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and

conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

22.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12));  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*.  *Id*.

27.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"  *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

### FACTS

30.     In violation of the TCPA, Defendants fail to obtain prior express written consent to make autodialed telemarketing calls to cellular telephone numbers.

31.     Consumer complaints about Defendants' invasive calls are commonplace on the internet. As a sample, consumers have complained as follows:

- They frequently robocall me even after I've requested numerous times that they stop, they just don't give a sh*t. They spoof phone numbers in your local area code so you think it's legit and it ends up being some recorded call that connects you to a call center across the country in FL. I would NEVER trust the security of my home to a company that engages in such deceptive and illegal sale and

marketing practices.[1]

- This is 2Gig calling with their free yard sign scam. (I live in NY and don't have a yard.) I bought a disposable phone and called back their number several times. Every time, I got a different name for the company. Their automated system also lead the person who answered to think they had called me and still said that I had been called because I was randomly selected as soon as they answered. After about 20 calls, I had found some who provided more information than others, including who they work for. Company information is: Nortek Security & Control LLC   Nortek Security & Control LLC 2600 W. Executive Parkway, Suite 340 Lehi, UT 84043 801-221-9162 Just fill out a complaint with the Better Business Bureau.[2]

32.     On April 16, 2018, Plaintiff received a series of unwanted telemarketing calls from Defendant Nortek and/or Defendant Security Specialist from the telephone numbers 561-880-4750 and 813-551-7056.

33.     The calls were received by Plaintiff's cellular telephone number ending in 7091 ("7091 Number").

34.     When Plaintiff answered the initial call from 561-880-4750, a recorded voice asked her a series of questions regarding her interest in home security products. Once the recording ended she was transferred to a live person who again asked Plaintiff if she was interested in a home security product. Upon answering that she might be interest in a home security product, the caller immediately hung up the phone and called her back from the 813-551-7056 number.

35.     Upon Plaintiff answering the call from 813-551-7056, the caller identified himself as "Mike" and notified Plaintiff that he was selling home security goods and services. When Plaintiff asked for a website to research the goods and services being sold, Plaintiff was told to go to the website of 2gig.com.

---

[1] *https://www.yelp.com/biz/nortek-security-and-control-carlsbad*
[2] *https://800notes.com/Phone.aspx/1-281-975-3032/3*

36.     Plaintiff is the sole, primary, and authorized user of the 7091 number.

37.     The purpose of Defendants' calls was to promote Defendants' goods and services. More specifically, the calls were part of Defendant Nortek's lead generation campaign attempting to convince Plaintiff to purchase goods and services.

38.     In addition to using prerecorded messages, Defendants utilized an ATDS to place some or all of the calls at issue.   The equipment used by Defendants has the capacity store telephone numbers using a random or sequential generator, and to dial such numbers.   The equipment used by Defendants also has the capacity to dial telephone numbers from a list without human intervention.

39.     Plaintiff never gave her cellular telephone number to Defendants and had no business relationship with Defendants.

40.     At no point in time did Plaintiff provide Defendants with her express written consent to be contacted using an ATDS.

41.     By placing unauthorized autodialed calls to Plaintiff's cellular telephone as alleged herein, Defendants have caused Plaintiff actual, concrete harm, including invasion of privacy, aggravation, and annoyance.

**CLASS ALLEGATIONS**

42.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the Class defined as follows:

> All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendants (or a third person acting on behalf of Defendants) called using a prerecorded message and/or an ATDS; (2) on the person's cellular telephone number; (3) for the purpose of marketing Defendants' products and services; and (4) for whom Defendants' lack the recipient's prior express written consent.

43.     Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

44.     **Numerosity**: Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

46.     **Commonality**: There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> a.  Whether Defendants made non-emergency calls to Plaintiff's and Class Members' cellular telephones using an ATDS;
>
> b.  Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> c.  Whether Defendants' conduct was knowing and willful;
>
> d.  Whether Defendants are liable for damages, and the amount of such damages; and
>
> e.  Whether Defendants should be enjoined from such conduct in the future

47.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely use prerecorded messages and/or an ATDS to call

cellular telephone numbers without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

48.     **Typicality**: Plaintiff's claims are typical of the claims or the Class Members, as they are all based on the same factual and legal theories.

49.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

50.     **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendants properly obtained prior express written consent to call and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

51.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the

complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

52.    Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

53.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice... to any telephone number assigned to a ... cellular telephone service ...." 47 U.S.C. § 227(b)(1)(A)(iii).

54.    The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the **capacity** – (A) to store **or** produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1) (emphasis added).

55.    Defendants – or third parties directed by Defendants – used an artificial or prerecord voice and/or equipment having the capacity to store telephone numbers using a random or sequential generator, or to dial such numbers. The equipment also has the capacity to dial telephone numbers from a list of numbers without human intervention. Defendants used an artificial or prerecord voice and/or this equipment to make non-emergency telephone calls to the cellular telephones of Plaintiff and Class Members.

56.    These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior

express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

57.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecord voice and/or automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

58.     As a result of Defendants conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Tia Barnett individually, and on behalf of the Class, prays for the following relief:

a.   A declaration that Defendants practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.   A declaration that Defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.   An injunction prohibiting Defendants from using an artificial or prerecord voice and/or automatic telephone dialing system to call telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.   An award of actual, statutory damages, and/or trebled statutory damages; and

e.   Such further and other relief the Court deems reasonable and just.

12

## JURY DEMAND

Plaintiff and Class members hereby demand a trial by jury of all claims that can be so tried.

Date: April 23, 2018

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiffs and the Putative Class*